UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUAN MENDOZA,

                              Plaintiff,                          OPINION AND ORDER

              -against-                                           11-CV-02487(SJF)(AKT)

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, P.O. MARGARET
JAEGER, P.O. KOHUT, P.O. GREGORY
NICHOLAS and P.O. JOHN DOES # 1-5,
said names being fictitious as the true names
are presently unknown, Individually and in their
Official Capacities,

                              Defendants.
------------------------------------------------------------X

FEUERSTEIN, United States District Judge:

On May 23, 2011, plaintiff Juan Mendoza ("plaintiff") filed this action against defendants

County of Nassau ("the County"), Nassau County Police Department ("NCPD"), police officers

Margaret Jaeger ("Jaeger"), Kohut and Gregory Nicholas ("Nicholas"), and five (5) unidentified

"John Doe" police officers (collectively, "defendants"), pursuant to, *inter alia*, 42 U.S.C. §§

1983 and 1985, alleging violations of his constitutional rights. Defendants now move pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint and plaintiff

cross-moves pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for leave to amend

his complaint. For the reasons stated herein, defendants' motion is granted and plaintiff's cross-

motion is denied.

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   SEP 27 2012   ★

LONG ISLAND OFFICE

I.    BACKGROUND

   A.    Factual Allegations[1]

Plaintiff alleges that on or about July 12, 2008, at approximately 2:30 p.m., he was "illegally apprehended" by unidentified police officers while he was walking to his vehicle, which was parked in Parking Field #4 at Jones Beach State Park, Wantagh, New York. (Compl., ¶ 11). According to plaintiff, at the time that officers detained him for suspicion of driving while intoxicated by alcohol and/or drugs, he was standing next to his vehicle, but did not have the keys in the ignition. (Compl., ¶ 14). Plaintiff alleges that he was thereafter transported to a NCPD Central Testing Unit ("C.T.U."), where he "willingly submitted himself to a series of tests, including an Intoxilyzer-Alcohol Analyzer test" administered by Jaeger and Nicholas. (Compl., ¶¶ 15-16). According to plaintiff, although the test results indicated that he had a 0.17% blood alcohol content, "well within the legal limits to operate a vehicle," (Compl., ¶ 16), he "was transported for arrest processing." (Compl., ¶ 17). Plaintiff further alleges that unidentified police officers "filled out false police reports and provided false and misleading information to the Prosecution which implicated [him] in the commission of a crime." (Compl., ¶ 18).

On or about July 13, 2008, plaintiff was arraigned on the charges of driving while impaired (N.Y. Vehicle and Traffic Law § 1192.3), driving while impaired on drugs (N.Y. Vehicle and Traffic Law § 1192.4) and driving while impaired on combined alcohol and drugs (N.Y. Vehicle and Traffic Law § 1192.4A), and was released on his own recognizance. (Compl.,

---

[1] The factual allegations are taken from the complaint and are assumed to be true for purposes of this motion only. They do not constitute findings of fact by the Court.

¶ 19). In total, plaintiff spent approximately twenty-four (24) hours in custody. (Compl., ¶ 20).

During the Fall of 2010, the prosecutor dropped the criminal charges against plaintiff.
(Compl., ¶ 21).


B.    Procedural History

On May 23, 2011, plaintiff filed this action against defendants, asserting claims pursuant
to (a) 42 U.S.C. §§ 1983 and 1985 for violations of his constitutional rights and (b) state law for
false arrest (third claim for relief) and malicious abuse of process (fourth claim for relief).
Specifically, plaintiff alleges: (a) that defendants violated his rights under the Fourth, Fifth,
Eighth and Fourteenth Amendments to the United States Constitution, i.e., his rights not to be
deprived of liberty without due process of law, to be free from seizure and arrest without
probable cause, to be free from unlawful imprisonment, to be free from unwarranted and
malicious criminal prosecution, to be free from infliction of emotional distress, not to have cruel
and unusual punishment imposed upon him, and to receive equal protection under the law (first
claim for relief); (b) that defendants conspired to violate his civil rights "by agreeing among
themselves to use excessive force in dealing with the Plaintiff and to falsely charge Plaintiff with
crimes and testify falsely * * * in violation of 42 U.S.C. § 1985," (Compl., ¶ 30), (second claim
for relief); and (c) that the acts of the named and unidentified police officers were carried out
pursuant to municipal policies of "initiating and continuing criminal proceedings without
evidence of criminal activity," (Compl., ¶ 44), and of "deliberate indifference to the rights of
persons in their domain who suffer violation of their right to freedom from the use of excessive
and unreasonable force and freedom from deprivation of liberty without due process of law * *

*," (Compl., ¶ 50) (fifth claim for relief). Plaintiff seeks compensatory damages in the amount of one million dollars ($1,000,000.00), punitive damages in the amount of one million dollars ($1,000,000.00), costs and attorney's fees.

Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint and plaintiff cross-moves pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for leave to amend the complaint.

II.    DISCUSSION

A.    Rule 12(b)(6) Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Aschroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard

4

requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See McGarry v. Pallito, 687 F.3d 505, 510 (2d Cir. 2012); Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)).

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint.

5

Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

B.    Section 1983 Claims

Section 1983 of Title 42 of the United States Code provides, in relevant part, that:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010), cert. denied sub nom Cornejo v. Monn, 131 S. Ct. 158, 178 L. Ed. 2d 243 (2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).  Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress...the deprivation of [federal] rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).

1.    Claims against Individual Defendants in their Individual Capacity

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quotations and citation omitted); see also Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2009) (accord); Patterson v. County of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir.

6

2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under Section 1983.") "Personal involvement" may be established by evidence either: (a) of "direct participation," i.e., intentional participation, "in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal," Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001); see also Gronowski v. Spencer, 424 F.3d 285, 293 (2d Cir. 2005), or (b) of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State University of New York, 352 F.3d 733, 753 (2d Cir. 2003); see also Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 254-55 (2d Cir. 2001). A complaint that "does not allege facts establishing the personal involvement of any of the individual defendants * * * is fatal to [a] claim under 42 U.S.C. § 1983." Costello v. City of Burlington, 632 F.3d 41, 48-49 (2d Cir. 2011); see also Rosa R. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989) (finding a complaint that did not allege that the defendant was "directly and personally responsible for the purported unlawful conduct" to be "fatally defective on its face."); Liffiton v. Keuker, 850 F.2d 73, 76 (2d Cir. 1988) (affirming dismissal of the complaint that lacked "specific factual allegations concerning [that defendant's] personal involvement.")

Plaintiff has not alleged the direct participation of any of the named individual defendants in the wrongdoing alleged in his complaint, nor any basis upon which to find those defendants liable in a supervisory capacity. Plaintiff does not even mention Kohut in the body of the

complaint, and the only allegation in the complaint against Jaeger and Nicholas, the only other named individual defendants, is that they administered a test to which plaintiff voluntarily submitted, which does not rise to the level of a deprivation of a constitutional right. (Compl., ¶ 16). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims against Jaeger, Kohut and Nicholas in their individual capacity is granted and plaintiff's Section 1983 claims against those defendants in their individual capacity are dismissed in their entirety.[2]

### 2. Claims against the Individual Defendants in their Official Capacity

"[A] suit against an official in his official capacity 'is *not* a suit against the official personally, for the real party in interest is the [governmental] entity.'" Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012) (quoting Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (emphasis in original)); see also Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official * * *."); Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003) (accord). "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent * * * [and] therefore should be treated as suits against the [entity]." Hafer, 502 U.S. at 25, 112 S. Ct. 358; see also Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45

---

[2] In light of this determination, the branches of defendants' motion seeking dismissal of plaintiff's false arrest claims on the grounds (a) that plaintiff has not shown the absence of probable cause for his arrest and (b) that the doctrine of qualified immunity precludes those claims, are denied without prejudice as moot.

(1989) (holding that an official capacity suit "is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the [governmental entity] itself.")

Since plaintiff has asserted claims against the County directly, any official capacity claims asserted against the individual defendants are redundant. Accordingly, the branch of defendants' motion seeking dismissal of any claims against the individual defendants in their official capacity is granted and any claims against the individual defendants in their official capacity are dismissed in their entirety with prejudice.

### 3. Claims against the NCPD[3]

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." See Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); see also Robischung-Walsh v. Nassau County Police Department, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010), aff'd, 421 Fed. Appx. 38 (2d Cir. Apr. 29, 2011). Since the NCPD is an administrative arm of Nassau County, without a separate legal identity, the claims against it are redundant to the claims against Nassau County. See, e.g. Sorrell v. Incorporated Village of Lynbrook, No. 10-cv-49, 2012 WL 1999642, at * 5 (E.D.N.Y. June 4, 2012) (dismissing claims

---

[3] In his opposition to defendants' motion, plaintiff seeks to voluntarily dismiss his claims against the NCPD pursuant to Rules 21 and 41(a) of the Federal Rules of Civil Procedure. However, since defendants had already served and filed their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure at the time plaintiff sought leave to have his claims against the NCPD voluntarily dismissed from this action, and a dismissal under Rule 41(a) is ordinarily without prejudice, plaintiff's application is denied.

against the NCPD because it is merely an administrative arm of Nassau County, which had been named separately as a defendant for each of the plaintiff's claims); Bristol v. Queens County, No. 09-cv-5544, 2011 WL 6937468, at * 6 (E.D.N.Y. Feb. 28, 2011), report and recommendation adopted by 2012 WL 10484 (E.D.N.Y. Jan. 3, 2012) (accord); Johnson ex rel. Johnson v. County of Nassau, No. 09-cv-4746, 2010 WL 3852032, at * 7 (E.D.N.Y. Sept. 27, 2010) (dismissing claims against the NCPD as redundant to the claims against the County); Wharton v. County of Nassau, No. 07-cv-2137, 2010 WL 3749077, at * 3 (E.D.N.Y. Sept. 20, 2010) (dismissing claims against the NCPD because, as an administrative arm of Nassau County, it lacked the capacity to be sued). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claims against the NCPD is granted and the complaint is dismissed in its entirety with prejudice as against the NCPD.

### 4. Claims against the County

"A municipality [or municipal entity] can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality [or municipal entity]." Jones v. Town of East Haven, 691 F.3d 72, 2012 WL 3104523, at * 6 (2d Cir. Aug. 1, 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Id.; see also Connick v. Thompson, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los Angeles County, California v. Humphries, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., *solely* because it

employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, 131 S.Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018)); Humphries, 131 S.Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011), cert. denied, 132 S. Ct. 1741, 182 L. Ed. 2d 528 (2012). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions– either expressly or tacitly." Jones, 691 F.3d 72, 2012 WL 3104523, at * 6. "Thus, a plaintiff can prevail against a municipality [or municipal entity] by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but

failed to take appropriate action to prevent or sanction violations of constitutional rights." Id. at * 7. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quotations and citation omitted). "[D]eliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." Id.; see also Cash, 654 F.3d at 334.

"[D]eliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious * * * but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." Cash, 654 F.3d at 334 (quotations, alterations and citations omitted). Moreover, "[i]n limited circumstances, a [municipal entity's] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." Connick, 131 S. Ct. at 1359. "To satisfy [Section 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. (internal quotations, alterations and citation omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360.[4]

---

[4] Although the Supreme Court recognized "a narrow range of * * * hypothesized single-incident liability" based upon "an obvious need for some form of training," Connick, 131 S.Ct. at 1361, this case does not fall within that narrow and "rare" range of cases, particularly because plaintiff does not allege a complete lack of training of NCPD personnel or that NCPD officers had an "utter lack of an ability to cope with constitutional situations" that existed in the hypothesized single-incident case. Id. at 1363.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. See Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Id.

The complaint alleges only that "Defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the [County and NCPD]," (Compl., ¶ 9); that "[t]he acts complained of were carried out by the * * * individual Defendants * * * pursuant to the customs, usages, practices, procedures, and rules of the [County and NCPD], all under the supervision of ranking officers * * *," (Compl., ¶¶ 26, 43); that "Defendants * * * engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her municipality/authority * * *," (Compl., ¶ 27); that the "customs, policies, usages, practices, procedures and rules of the [County and NCPD] included, but were not limited to, initiating and continuing criminal proceedings without evidence of criminal activity * * * [,] constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff * * *[,] were the direct and proximate cause of the constitutional violations suffered by Plaintiff * * *[,] [and] were the moving force behind the constitutional violation suffered by Plaintiff * * *," (Compl., ¶¶ 44-47); and that the County "as municipal policymaker in the training and supervision of Defendant police officers, have [sic] pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violation [sic] of their right to freedom from the use of excessive and unreasonable force and freedom from deprivation of liberty without due process of law * * *," (Compl., ¶ 50).

Since plaintiff pleads no facts from which a plausible inference can be made that any of

13

the individual defendants was a municipal policymaker for the County or NCPD at the time of his arrest, their actions cannot subject the County to municipal liability under Section 1983. See, e.g. Santos, 847 F. Supp. 2d at 577. Moreover, the complaint is devoid of any factual allegations which might support a plausible deliberate indifference, failure to train or failure to supervise claim. The conclusory allegations in the complaint, e.g., that the County and NCPD had a custom, policy, usage, practice, procedure or rule to, *inter alia*, initiate and continue criminal proceedings without evidence of criminal activity, are insufficient to state a claim for municipal liability under Section 1983. See, e.g. Simms v. City of New York, No. 10-CV-3420, 2011 WL 4543051, at * 2, 3 (E.D.N.Y. Sept. 28, 2011), aff'd, — Fed. Appx. —, 2012 WL 1701356 (2d Cir. May 16, 2012) (holding that a municipal liability claim based upon a failure to train theory "still must be properly pled under Iqbal," and that conclusory allegations of a policy, practice or custom, consisting of "little more than boilerplate," "must be disregarded")[5]; Khanukayev v. City

---

[5] Although the Second Circuit in Amnesty America v. Town of West Hartford, 361 F.3d 113, 130 n. 10 (2d Cir. 2004), indicated in dicta that a plaintiff "need only plead that the [municipality's] failure to train caused the constitutional violation," that case was decided before the Supreme Court "substantially reworked the federal pleading standards" in Iqbal and Twombly. Simms, 2011 WL 4543051, at * 2 n. 3. Since those Supreme Court decisions, "courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of [municipal] liability * * *." Id. (citing cases). "[A]n interpretation of Amnesty that allows plaintiffs to plead only the bare elements of their cause of action [for municipal liability] simply cannot be squared with Iqbal and Twombly." Id. Moreover, in affirming the decision of the Honorable Nicholas G. Garaufis, the Second Circuit specifically cited Iqbal to "agree with the district court in concluding that th[ere] [was] insufficient factual material to 'allow[] [a] court to draw the reasonable inference that the defendant [was] liable for the misconduct alleged." Simms, 2012 WL 1701356, at * 2. The Second Circuit also rejected the dictum in Amnesty America, indicating that plaintiffs are not relieved "of their obligation under Iqbal to plead a facially plausible claim." Id. at * 3 n. 4. Accordingly, in order to state a claim for municipal liability under Section 1983, plaintiffs must plead "sufficient factual material to support a reasonable inference that [the plaintiff's] injuries resulted from the [municipality's] failure to train its employees [or some other type of municipal policy, practice, or custom]." Id. at * 3.

14

of New York, No. 09 Civ. 6175, 2012 WL 3538729, at * 4 (S.D.N.Y. Aug. 13, 2012) (recommending dismissal of the plaintiff's Monell claim because he had not provided any factual allegations to support his assertion that the police officers' actions were due to a failure by the municipality to properly train its officers or identified in what way the municipality's training was insufficient, nor did the complaint otherwise allege the particulars of the policy or custom, or the manner in which there was a failure to train); Santos, 847 F. Supp. 2d at 577 (dismissing the plaintiff's municipal liability claims with prejudice "[b]ecause the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff.").

In addition to the pleading deficiency, the complaint fails to state a Monell claim against the County because "Monell does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original); see also Okin v. Village of Cornwall-On-Hudson Police Department, 577 F.3d 415, 439 (2d Cir. 2009). When there is no underlying constitutional violation, there can be no municipal liability under Monell. See Segal, 459 F.3d at 219 (holding that the district court's decision not to address the municipal defendants' liability under Monell was "entirely correct" because the district court had properly found no underlying constitutional violation). Since the complaint fails to state a plausible Section 1983 cause of action against the individual defendants based upon any independent constitutional violation, plaintiff cannot state a claim for municipal liability under Monell. See, e.g. Schultz v. Incorporated Village of

Bellport, — Fed. Appx. —, 2012 WL 1506033, at * 2 (2d Cir. May 1, 2012) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights * * * his * * * Monell claim necessarily fail[s] as well."); Claudio v. Sawyer, 409 Fed. Appx. 464, 466 (2d Cir. Feb. 10, 2011) ("Th[e] pleading defect [i.e., the plaintiffs' failure sufficiently to allege that the defendant acted under color of state law] further doomed plaintiffs' Monell claim * * * as such a claim must be based on an independent constitutional violation by a state actor.") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's municipal liability claim against the County is granted and that claim (fifth claim for relief) is dismissed in its entirety.


     C.     Conspiracy Claims

The intracorporate conspiracy doctrine, which applies to conspiracy claims pursuant to both 42 U.S.C. § 1983, see Dilworth v. Goldberg, 10 Civ. 2224, 2012 WL 4017789, at * 30 (S.D.N.Y. Sept. 13, 2012); Anemone v. Metropolitan Transportation Authority, 419 F. Supp. 2d 602, 603-04 (S.D.N.Y. 2006), and 42 U.S.C. § 1985, see Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978), "posits that officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." Jefferson v. Rose, — F. Supp. 2d —, 2012 WL 1398743, at * 4 (E.D.N.Y. Apr. 23, 2012) (quotations and citations omitted); see also Smith v. Town of Hempstead Department of Sanitation Sanitary District No. 2, 798 F. Supp. 2d 443, 461 (E.D.N.Y. 2011); Varricchio v. County of Nassau, 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010). The intracorporate conspiracy doctrine "extends to public corporate bodies, including municipalities." Nimkoff v.

Dollhausen, 751 F. Supp. 2d 455, 466 (E.D.N.Y. 2010); see also Michael v. County of Nassau, No. 09-cv-5200, 2010 WL 3237143, at * 5 (E.D.N.Y. Aug. 11, 2010) (holding that the intracorporate conspiracy doctrine applies to municipalities).

An exception to the intracorporate conspiracy doctrine applies "where the alleged conspirators are shown to be each acting with independent motives * * *," Smith, 798 F. Supp. 2d at 461, i.e., " if the individuals are motivated by a separate, personal stake in carrying out the entity's objective." Walker v. New York City Department of Corrections, No. 01 Civ. 1116, 2008 WL 4974425, at * 11 (S.D.N.Y. Nov. 19, 2008); see also Everson v. New York City Transit Authority, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002).

Plaintiff alleges that the named and unidentified police officers were all employed by the NCPD and acting "within the scope of [their] employment and incidental to their otherwise lawful duties and functions as employees, servant, agents and police officers." (Compl., ¶¶ 8-9). Moreover, there are no factual allegations in the complaint suggesting that any defendant was pursuing "personal interests wholly separate and apart" from the NCPD's interests. Michael, 2010 WL 3237143, at * 5; see also Cruz v. Reilly, No. 08-cv-1245, 2009 WL 2567990, at * 6 (E.D.N.Y. Aug. 18, 2009); Rodriguez v. City of New York, 644 F. Supp. 2d 168, 201 (E.D.N.Y. 2008). Thus, plaintiff's conspiracy claims are barred by the intracorporate conspiracy doctrine. See, e.g. Contant v. City of New York, No. 09-cv-2851, 2012 WL 1158756, at * 4 (E.D.N.Y. Mar. 16, 2012), report and recommendation adopted by 2012 WL 1165623 (Apr. 9, 2012) (finding that the plaintiff's claim alleging a conspiracy between fellow officers of the police department were barred by the intracorporate conspiracy doctrine); Nimkoff, 751 F. Supp. 2d at 466-67 (finding that the plaintiff's conspiracy claims against members of the NCPD alleged to be

acting within the scope of their employment were barred by the intracorporate conspiracy doctrine); Cruz, 2009 WL 2567990, at * 6 (finding the intracorporate conspiracy doctrine applicable to bar the plaintiff's conspiracy claims where the defendants were all employees of the Suffolk County Police Department and the plaintiff did not allege that any defendant was acting outside the scope of employment).

Plaintiff's contention that he adequately pleads a conspiracy between "presumptive State [Park Police Officers]" and defendants is without merit, since nowhere in the complaint is there any mention of any New York State Park Police ("NYSPP") officers. Indeed, the complaint identifies the "John Doe" defendants as "police officers employed by the [NCPD]." (Compl., ¶¶ 7-8). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's conspiracy claim is granted and that claim (second claim for relief) is dismissed in its entirety with prejudice for failure to state a claim for relief.[6]

### D. State Law Claims

Plaintiff's application for leave to voluntarily withdraw his state law claims pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, (Plf. Mem., at 2 n. 3), is granted since I would decline to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3) in any event, and plaintiff's state law claims are dismissed without prejudice.

---

[6] In light of this determination, it is unnecessary to consider defendants' remaining contentions seeking dismissal of plaintiff's conspiracy claim.

E.    Leave to Amend

Plaintiff seeks leave to amend his complaint: (a) to "replace" the "John Doe" defendants with identified NYSPP officers, in their individual capacity; (b) to plead two (2) new claims for (i) failure to intervene as against Jaeger, Kohut and Nicholas and the identified NYSPP officers and (ii) malicious prosecution as against "all individually-named defendants," i.e., Jaeger, Kohut and Nicholas; and (c) to re-plead his Section 1985 conspiracy claim. Since plaintiff does not seek leave to re-plead his Section 1983 claims against the individual defendants, or his Monell claim against the County, for the reasons set forth above, those claims are dismissed with prejudice for failure to state a claim for relief.[7]

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008). "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see

---

[7]  In any event, in his opposition to defendants' motion and cross motion seeking leave to amend the complaint, plaintiff still fails to set forth any factual allegations from which the personal involvement of any of the individual defendants in the alleged constitutional violations may be inferred, nor any basis upon which to support a Monell claim against the County.

also <u>Beachum v. AWISCO New York Corp.</u>, 459 Fed. Appx. 58, 59 (2d Cir. Feb. 16, 2012) (summary order) (accord); <u>Lucente v. International Business Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).")

### 1. Statute of Limitations

"The statute of limitations for claims brought under Section 1983 is governed by state law, and * * * is the three-year period for personal injury actions under New York State law." <u>Shomo</u>, 579 F.3d at 181; <u>see also</u> <u>Pearl v. City of Long Beach</u>, 296 F.3d 76, 79 (2d Cir. 2002) ("In Section 1983 actions, the applicable limitations period is * * * three years.") "A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." <u>Shomo</u>, 579 F.3d at 181; <u>see also</u> <u>Pearl</u>, 296 F.3d at 80.

Since plaintiff was arrested on July 12, 2008, and arraigned on July 13, 2008, any claims relating to his arrest, i.e., his false arrest and imprisonment, proposed failure to intervene claims and conspiracy claims relating to the filing of false reports, etc., must have been commenced no later than July 13, 2011. Thus, the proposed claims against the NYSPP officers and for failure to intervene are time-barred unless they relate back to the original complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

### a. Amendment to Replace "John Doe" Defendants

"'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."

<u>Tapia-Ortiz v. Doe</u>, 171 F.3d 150, 151-52 (2d Cir. 1999); <u>see also</u> <u>Aslanidis v. U.S. Lines, Inc.</u>, 7

F.3d 1067, 1075 (2d Cir. 1993). Thus, an amendment seeking to replace a "John Doe" defendant

with a named defendant "may only be accomplished when all of the specifications of Fed. R.

Civ. P. 15(c) are met." <u>Aslanidis</u>, 7 F.3d at 1075; <u>see also</u> <u>Barrow v. Wethersfield Police</u>

<u>Department</u>, 66 F.3d 466, 468 (2d Cir. 1995). Rule 15(c)(1) of the Federal Rules of Civil

Procedure provides, in relevant part:

> "An amendment to a pleading relates back to the date of the original pleading
> when: * * * (B) the amendment asserts a claim * * * that arose out of the conduct,
> transaction, or occurrence set out– or attempted to be set out– in the original
> pleading; or (C) the amendment changes the party or the naming of the party
> against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the
> period provided by Rule 4(m) for serving the summons and complaint, the party
> to be brought in by amendment: (i) received such notice of the action that it will
> not be prejudiced in defending on the merits; and (ii) knew or should have known
> that the action would have been brought against it, but for a mistake concerning
> the proper party's identity."

In interpreting Rule 15(c), the Second Circuit has held:

> "There are thus three requirements that must be met before an amended complaint
> that names a new party can be deemed to relate back to the original timely
> complaint. First, both complaints must arise out of the same conduct, transaction,
> or occurrence. Second, the additional defendant must have been omitted from the
> original complaint by mistake. Third, the additional defendant must not be
> prejudiced by the delay."

<u>VKK Corp. v. National Football League</u>, 244 F.3d 114, 128 (2d Cir. 2001). "The question under

Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the

proposed defendant] as the proper defendant, but whether [the proposed defendant] knew or

should have known that it would have been named as a defendant but for an error." <u>Krupski v.</u>

<u>Costa Crociere, S.p.A.</u>, 130 S. Ct. 2485, 2493, 177 L. Ed. 2d 48 (2010).

Both the original and proposed amended complaint arise out of the same conduct, i.e., the

arrest and prosecution of plaintiff. However, there is no basis upon which to infer that the identified NYSPP officers received any notice of this action within the period prescribed by Rule 4(m) of the Federal Rules of Civil Procedure, i.e., one hundred twenty (120) days after the complaint was filed, or knew or should have known that plaintiff's failure to name them as defendants in his original complaint was due to a mistake concerning the proper parties' identities, particularly because there is no interrelationship between the County and the NYSPP, nor such a similarity between the NCPD and NYSPP that the NYSPP should have suspected that a mistake had been made when the "John Doe" officers were identified in the complaint as NCPD officers instead of NYSPP officers. Cf. Krupski, 130 S. Ct. at 2498 (finding that an amended complaint related back to the original complaint where, *inter alia*, the named defendant and proposed defendant were related corporate entities with similar names); VKK Corp., 244 F.3d 128-29 (finding that the amended complaint related back to the original complaint where, *inter alia*, there was an ongoing relationship between the named defendant and the proposed defendant, with the proposed defendant having transferred some of its assets to the named defendant in order to help them accomplish their mutual goal; the president of the proposed defendant was also the president of the named defendant's corporate general partner; and the president admitted that he had read the original complaint when it was first filed and, thus, should have known that some of the allegations therein were meant to be directed at the proposed defendant). Accordingly, the proposed amendment to the complaint to replace the "John Doe" defendants with identified NYSPP officers does not relate back to the original complaint. Since it is undisputed that the Section 1983 claims asserted in the original complaint and proposed failure to intervene claim against the identified NYSPP officers are time-barred absent their

22

relation back to the original complaint, the branch of plaintiff's cross motion seeking leave to amend the complaint to replace the "John Doe" defendants with identified NYSPP officers is denied.[8]

### b. Proposed New Claims

#### i. Failure to Intervene Claim

A "[f]ailure to intercede to prevent an unlawful arrest can be grounds for Section 1983 liability." Ricciuti v. New York City Transit Authority, 124 F.3d 123, 129 (2d Cir. 1997); see also Anderson v. Branen, 17 F.3d 552, 557 (2d Cir, 1994). Since plaintiff was arrested on July 12, 2008, and arraigned on July 13, 2008, any claim against the individual defendants named in the original complaint for failure to intercede to prevent his arrest must have been commenced no later than July 13, 2011, unless that claim relates back to the original complaint.

Since the proposed amendment seeking to assert a failure to intervene claim against the individual defendants named in the original complaint "arose out of the conduct, transaction, or occurrence set out * * * in the original pleading," i.e., plaintiff's arrest, it relates back to the original complaint under Rule 15(c)(1)(B). Accordingly, the proposed failure to intervene claim against the individual defendants named in the original complaint is not time-barred.

#### ii. Malicious Prosecution Claim

"[A] cause of action for malicious prosecution does not accrue until the criminal

---

[8] Since plaintiff now identifies the "John Doe" defendants as NYSPP officers, (Plf. Mem., at 1 n. 2), and the claims against the NYSPP officers are time-barred, plaintiff's claims against the "John Doe" defendants are dismissed with prejudice.

proceedings have terminated in the plaintiff's favor * * *." Heck v. Humphrey, 512 U.S. 477, 489, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); see also Assegai v. Bloomfield Board of Education, 165 Fed. Appx. 932, 934-35 (2d Cir. Feb. 7, 2006) (holding that a claim for malicious prosecution "must await resolution of the underlying criminal charges."); Mione v. McGrath, 435 F. Supp. 2d 266, 269 (S.D.N.Y. 2006) (holding that the plaintiff's claim for malicious prosecution accrued on the date the criminal charges were dismissed against him). Since the complaint alleges that the criminal charges were dismissed against plaintiff in the Fall of 2010, the proposed claim for malicious prosecution is not time-barred.

    2. Futility of Proposed Amendments

      a. Failure to Intervene

  "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988); see also Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001); Anderson, 17 F.3d at 557. However, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Anderson, 17 F.3d at 557; see also Jean-Laurent v. Wilkerson, 461 Fed. Appx. 18, 21 (2d Cir. Feb. 8, 2012). "Failure to intercede results in liability when an officer observes [the constitutional violation] or has reason to know that [the violation will occur]." Curley, 268 F.3d at 72.

  Plaintiff does not allege any facts from which it may reasonably be inferred that Jaeger, Kohut or Nicholas observed, or had reason to know, that his constitutional rights were being violated, or that those defendants had a reasonable opportunity to intercede to stop other officers

24

from violating his constitutional rights. Accordingly, the proposed failure to intervene claim is futile, since it would not withstand a motion to dismiss pursuant to Rule 12(b)(6). See, e.g. Jean-Laurent, 461 Fed. Appx. at 21-22 (affirming dismissal of failure to intercede claim where the plaintiff did not allege that the defendants observed or had reason to know that the plaintiff's constitutional rights were being violated, or had a reasonable opportunity to intercede to stop the violation of the plaintiff's constitutional rights); Morgan v. County of Nassau, 720 F. Supp. 2d 229, 240 (E.D.N.Y. 2010) (dismissing failure to intervene claim where there were no facts suggesting that the defendants observed the violation of the plaintiff's constitutional rights).

Moreover, a failure to intervene claim "necessarily fail[s] [when] all the constitutional tort claims have been dismissed." Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009). Accordingly, the branch of plaintiff's motion seeking leave to amend the complaint to assert a failure to intervene claim against the individual defendants named in the original complaint is denied.


b.      Malicious Prosecution Claim

"In order to prevail on a Section 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, * * *, and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010); see also Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (accord). To state a claim of malicious prosecution under New York law, a plaintiff must allege: (1) that the defendant initiated or continued a criminal proceeding against him or her (2) without probable cause and (3) out of malice; and (4) that the criminal

proceeding terminated in his or her favor. See Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); Martinez v. City of Schenectady, 97 N.Y.2d 78, 84, 735 N.Y.S.2d 868, 761 N.E.2d 560 (2001).

"[P]olice officers can 'initiate' prosecution by filing charges or other accusatory instruments," Cameron v. City of New York, 598 F.3d 50, 63 (2d Cir. 2010); by filling out complaining and corroborating affidavits or swearing to and signing felony complaints, Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005); or by creating false information and forwarding it to prosecutors, Wong v. Yoo, 649 F. Supp. 2d 34, 65 (E.D.N.Y. 2009); Alcantara v. City of New York, 646 F. Supp. 2d 449, 457-58 (S.D.N.Y. 2009); Espada v. Schneider, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007). Thus, "an arresting officer may be held liable for malicious prosecution when [he] creates false information likely to influence a jury's decision and forwards that information to prosecutors." Llerando-Phipps, 390 F. Supp. 2d at 383; see also Myers v. County of Nassau, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011) ("[A]n arresting officer may * * * be liable pursuant to a malicious prosecution theory if it can be shown that the officer has knowingly created false information that creates the basis for the prosecution."); Douglas v. City of New York, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009) ("In a situation where a police officer is accused of providing false information to a prosecutor that influences a decision whether to prosecute, he may be held liable for malicious prosecution.")

There are no factual allegations, either in the original complaint or in plaintiff's cross motion for leave to file an amended complaint, from which it may reasonably be inferred that Jaeger, Kohut or Nicholas were personally involved in the initiation of the prosecution of plaintiff, i.e., that any of those defendants filed the criminal charges against plaintiff or "played a

26

role in initiating the prosecution by preparing the alleged false [reports] and forwarding [them] to prosecutors." Ricciuti, 124 F. 3d at 130. Accordingly, the branch of plaintiff's cross motion seeking leave to amend the complaint to assert a claim against the individual defendants named in the original complaint based upon a malicious prosecution theory is denied, as any such amendment would be futile.


c.    Section 1985 Claim

Plaintiff's proposed amendment to re-plead his Section 1985 claim does not cure the pleading deficiency requiring dismissal of that claim in the original complaint, i.e., that claim is still precluded by the intracorporate conspiracy doctrine.

Plaintiff seeks to avoid the intracorporate conspiracy doctrine by alleging that police officers from the NCPD and unidentified "others," "motivated by discriminatory animus, met and agreed that they would continue to hold [him] in custody and prepare false records implicating him in criminal activity, in spite of the absence of probable cause or any other justification for doing so * * *." (Plf. Mem., at 24). However, such conclusory and vague allegations of a conspiracy fail to allege a plausible Section 1985 claim and "cannot withstand a motion to dismiss." Emmerling v. Town of Richmond, 434 Fed. Appx. 10, 12 (2d Cir. June 14, 2011); see also Anderson News, LLC v. American Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012) (holding that conclusory allegations of participation in a conspiracy are insufficient to state a claim for relief); X-Men Security, Inc. v. Pataki, 196 F.3d 56, 71 (2d Cir. 1999) (accord). Accordingly, the branch of plaintiff's cross motion seeking leave to amend the complaint to re-plead his Section 1985 claim is denied.

III.     Conclusion

For the reasons set forth above, the branches of defendants' motion seeking dismissal of plaintiff's Section 1983 and 1985 causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted; plaintiff's cross motion for leave to amend the complaint is denied; plaintiff's Section 1983 and 1985 claims are dismissed in their entirety with prejudice for failure to state a claim for relief; and plaintiff's state law claims are dismissed in their entirety without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. The Clerk of the Court shall enter judgment in favor of defendants and close this case.

SO ORDERED.

s/ Sandra J. Feuerstein

_____
Sandra J. Feuerstein
United States District Judge

Dated: September 27, 2012